190 August 12, 2026 No. 764

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

John WEST,
*Plaintiff-Appellant,*

*v.*

Rhiannon HENKELS,
in her official capacity as Josephine County Clerk,
*Defendant-Respondent.*

Josephine County Circuit Court
24CV55538; A186686

Robert S. Bain, Judge.

Argued and submitted March 4, 2026.

Stephen J. Joncus argued the cause for appellant. Also on the briefs was Joncus Law P. C.

J. Aaron Landau argued the cause for respondent. Also on the brief was Harrang Long P. C.

Before Egan, Presiding Judge, Pagán, Judge, and Armstrong, Senior Judge.

ARMSTRONG, S. J.

Vacated and remanded for entry of judgment declaring the rights of the parties.

## ARMSTRONG, S. J.

Seeking to invalidate the results of his recall election, plaintiff, a former Josephine County commissioner, contends that defendant, the Josephine County clerk, impermissibly used statistical sampling to verify the signatures submitted in support of the petition that initiated the recall election. Plaintiff argues that the impermissible use of statistical sampling renders the recall petition and subsequent election void. We conclude that the statute governing the verification of signatures on recall petitions reflects a legislative intention to allow the use of statistical sampling to verify signatures.

The underlying facts are not disputed. A petition to recall plaintiff was initiated in August 2024, and signatures were collected in support of the petition. The signatures were timely submitted to defendant, who used a statistical sampling technique set out by the Secretary of State to determine that the petition was supported by 6,476 signatures. Because that figure exceeded the 6,445 signatures required to support a recall petition in Josephine County, defendant filed the petition and set a recall election for December 17, 2024.[1] Plaintiff filed a complaint seeking a declaration that the petition and subsequent recall election were void because ORS 249.875 required defendant to individually verify each of the required 6,445 signatures before filing the petition, and defendant individually verified only 744 signatures. The trial court concluded that defendant was authorized to use statistical sampling to verify the signatures, ruled that plaintiff's claim for declaratory relief was without merit, and dismissed the complaint.

On appeal, plaintiff appeals from the judgment dismissing the case, contending that the court committed legal error in interpreting ORS 249.875 to allow statistical sampling. This appeal thus presents a question of statutory construction, specifically, whether ORS 249.875 precludes the use of statistical sampling to verify signatures on a recall petition. We construe statutes by examining their text and

[1] The number of signatures required to support a recall petition is 15 percent of the total votes cast in the district in the most recent election for governor. Or Const, Art II, § 18(2); ORS 249.870. Once a recall petition is filed, and the public officer does not resign, a recall election must be held within 35 days. Or Const, Art II, § 18(4).

context, as well as any helpful legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). We begin by looking to the statutory text, which "is the best evidence of the legislature's intent." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993).

By way of background, every public officer in Oregon is subject to recall. Or Const, Art II, § 18. The recall process begins when an elector from the public officer's district files a prospective petition with the official authorized to order the recall election. ORS 249.865(1). There follows a 90-day period to collect the necessary number of petition signatures and to submit the petition, and a 30-day period to verify the signatures. ORS 249.875(1). After the signatures are verified, the recall petition is filed, *id.*, and, if the public officer does not resign within five days, a recall election must be held. *See* Or Const, Art II, § 18(4) ("If the public officer does not resign within five days after the [recall] petition is filed, a special election shall be ordered to be held within 35 days in the electoral district to determine whether the people will recall the officer.").

At issue here is how an elections officer is to verify the signatures submitted with a petition before it is accepted for filing. ORS 249.875 provides, in pertinent part:

"(1)   *** A recall petition shall not be accepted for signature verification if it contains less than 100 percent of the required number of signatures. The petition shall not be accepted for filing until 100 percent of the required number of signatures of electors have been verified.

"(2)   The provisions for verification of signatures on an initiative or referendum petition contained in ORS 250.105, are applicable to the verification of signatures on a recall petition."

And, as relevant here, ORS 250.105(5) provides: "The [S]ecretary [of State] by rule shall designate a statistical sampling technique to verify whether a petition contains the required number of signatures of electors." *See* OAR 165-014-0110 (setting out statistical sampling procedures to implement ORS 249.875, among other statutes).

Plaintiff contends that the wording of the statute shows that it is intended to preclude statistical sampling

as a method to verify signatures on recall petitions, focusing on the portion of ORS 249.875(1) that states that a "petition shall not be accepted for filing until 100 percent of the required number of signatures of electors have been verified." However, the context of that text belies plaintiff's proposed construction because ORS 249.875(2) clearly evinces a legislative intention to allow statistical sampling to verify signatures. ORS 249.875(2) specifies that "the verification of signatures on a recall petition" is governed by "the provisions for verification of signatures * * * contained in ORS 250.105." ORS 250.105, in turn, contains various provisions for signature verification, including one that specifically requires that "a statistical sampling technique to verify whether a petition contains the required number of signatures of electors" shall be designated by the Secretary of State.[2] ORS 250.105(5). That subsection (2) of ORS 249.875 specifically addresses how signatures are to be verified indicates that the text on which plaintiff relies in subsection (1)—*viz.*, that 100 percent of the required number of signatures must be verified—does not designate the method for signature verification. And, the legislature's reference in subsection (2) to a statute that clearly contemplates the use of statistical sampling to verify signatures indicates a legislative intention to allow statistical sampling to be used to verify signatures on recall petitions.

Moreover, plaintiff's argument that the phrase "100 percent of the required number of signatures" prescribes a method of signature verification is inconsistent with the use of the same phrase in the immediately preceding sentence, which states that an election official may not accept a prospective petition that "contains less than 100 percent of the required number of signatures." ORS 249.875(1). Those provisions set preconditions for accepting and filing a recall petition: that a petition must meet a numerical threshold for submitted and verified signatures. While the specific number of required signatures will vary by time and location, *see* Or Const, Art II, § 18(2); ORS 249.870 (the number of signatures required to support a recall petition is 15 percent of the

___

[2] The statute also contains specific requirements for the application of the sampling process, ORS 250.105(5), (6), and authorizes the secretary to employ professional assistance to determine the sampling technique it designates under subsection (5), ORS 250.105(8).

total votes cast in the district in the most recent election for governor), the use of "100 percent of the required number of signatures" refers to those thresholds. A petition must contain at least the required number of signatures to proceed to verification; similarly, it must contain at least that number of verified signatures in order to be filed. While an elections official cannot file a recall petition until the official has determined that the petition contains the required number of valid signatures, ORS 249.875(1) does not preclude the use of statistical sampling to determine that the threshold number of signatures has been met. We have reviewed the pertinent legislative history and have found nothing that disturbs that fundamental understanding of the legislature's intention regarding the verification of signatures on recall petitions as expressed in the text and structure of the statute. In other words, considering the text of the whole provision, the only plausible construction of ORS 249.875 is that 100 percent of the required number of signatures must be verified before a recall petition may be filed and that the signatures may be verified using the Secretary of State's designated statistical sampling technique.

We agree with the trial court's conclusion that defendant was authorized to use statistical sampling to verify signatures on plaintiff's recall petition and conclude that the trial court did not err in rejecting plaintiff's challenge to the recall petition and election. However, the court erred in dismissing the claim for declaratory relief "because the proper disposition of *** declaratory relief claims [is] not to dismiss them but to declare the parties' rights." *Sims v. Besaw's Cafe*, 165 Or App 180, 183 n 3, 997 P2d 201 (2000); *see also* ORS 28.010 ("Courts of record *** have power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed"; such "declaration[s] may be either affirmative or negative in form and effect," and "have the force and effect of a judgment."); ORS 28.070 ("All orders and judgments under this chapter may be appealed from or reviewed as other orders and judgments."). We therefore vacate the judgment and remand for the trial court to enter a judgment declaring the rights of the parties.

Vacated and remanded for entry of judgment declaring the rights of the parties.